IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PENNEY ROTHMALLER,** : | |
| : | Case No. 2:19-cv-02390-JDW |
| *Plaintiff,* : | |
| : | |
| v. : | |
| : | |
| **UNIVERSITY OF PENNSYLVANIA** : | |
| **HEALTH SYSTEM,** *et al.*, : | |
| : | |
| *Defendants.* : | |
| : | |

## MEMORANDUM

Penny Rothmaller altered employee time cards, so her employer fired her. She claims that the real reason she was fired was because of her race. But she has no evidence to prove that allegation. The Court will therefore grant summary judgment against her.

I.   BACKGROUND

   A.   Ms. Rothmaller's Alteration of Employee Time Cards

In 2012, Defendant Clinical Care Associates hired Ms. Rothmaller as a Practice Manager.[1] In that position, she had to review, edit, and approve her subordinates' timecards and review and manage her subordinates' use of overtime. Her job description required her to comply with federal, state, and local laws, and with Penn's policies.

Penn has a policy governing compliance with the Fair Labor Standards Act. It also uses an automated time and attendance system, called "e-STAR," which employees use to document the

---

[1] In her Complaint, Ms. Rothmaller names "University of Pennsylvania Health System," "Penn Medicine," and "Clinical Care Associates" as Defendants. In their Amended Answer (ECF No. 8), Defendants assert that the first two entities should be identified as "The Trustees of the University of Pennsylvania." The exact identity of the Defendants does not appear to be material to this Motion. The Court will therefore refer to all Defendants as "Penn," as the Parties do.

time they work by swiping an identification badge at the beginning and end of each shift. Employees refer to these swipes as "punches." The e-STAR system allows Practice Managers to, among other things, check for missing punches and manage potential time and attendance issues.

On November 5, 2018, Penn received a complaint that Ms. Rothmaller was altering an employee's timecards. A Penn employee investigated and identified improper edits to the employee's punches. So Penn commissioned a deeper dive into the punch edit reports for 10 more employees that Ms. Rothamaller supervised. That report revealed that Ms. Rothamaller changed 136 punches for employees reporting to her.

Penn concluded that Ms. Rothmaller's conduct violated both Penn's policies and federal law. So Penn terminated her on November 15, 2018. Ms. Rothmaller filed an internal appeal of the termination decision. As a result, Penn agreed to designate the end of Ms. Rothmaller's employment as a resignation, rather than a termination.

### B.     Penn's Investigation of Other Incidents of Time-Card Alteration

Following the end of Ms. Rothmaller's employment, Penn held a meeting of Practice Managers to reinforce than they should not alter time records. It also conducted an audit of other Practice Managers to determine whether they were engaged in similar conduct. It performed that audit by sorting the names of its Practice Managers alphabetically and then using a random number generator to select a subset for audit. Penn has since terminated two other Practice Managers for similar conduct. One of those Practice Managers, Catrina Young, was African-American, and another, Denise Engle, was white.

Ms. Rothmaller does not dispute any of these facts. She does, however, take issue with the audit that Penn conducted. She argues that it was "amateurish and non-scientific." (ECF No. 18-3 at ¶ 59.) However, she offers no evidence about the design or conduct of the audit. She just offers

attorney argument about its design. She also argues that Penn's termination of Ms. Engle is not relevant because Ms. Engle changed timecards with the express intent of denying employees overtime and was terminated 10 months after she was.

### C. Procedural History

Ms. Rothmaller asserts one count under the Civil Rights Act of 1866, 42 U.S.C. § 1981, alleging that Defendants engaged in racial discrimination when they terminated her. Penn filed this Motion for summary judgment following discovery.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). The movant is entitled to judgment as a matter of law when the non-moving party fails to make such a showing. *See Celotex*, 477 U.S. at 323.

**III.     ANALYSIS**

Section 1981 prohibits racial discrimination in making and enforcing contracts. *See* 42 U.S.C. § 1981. The three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to Section 1981 claims. Under *McDonnell Douglas*, an employee must establish a *prima facie* case of discrimination, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. *See Storey v. Burns Int'l Sec. Servs.,* 390 F.3d 760, 764 n. 11 (3d Cir.2004). If the employer articulates such a reason, the employee must then proffer evidence to allow a reasonable factfinder to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual. *Sarullo v. United States Postal Serv.,* 352 F.3d 789, 797 (3d Cir.2003) (*per curiam*).

Defendants argue that they are entitled to summary judgment as to Ms. Rothmaller's racial discrimination claim on two grounds. First, they argue that Ms. Rothmaller is unable to establish a *prima facie* case of racial discrimination because she cannot establish either the second or fourth prongs of a *prima facie* case. Second, Defendants argue that even if Ms. Rothmaller is able to establish a *prima facie* case, she has not established that Defendants' articulated nondiscriminatory reason for Plaintiff's termination is pretextual. The Court concludes that the record before it demonstrates that the fourth prong of Ms. Rothmaller's *prima facie* case is tenuous, at best. What is clearer, however, is that the record does not enable Ms. Rothmaller's claim to meet the higher evidentiary burden at the final pretextual analysis of the *McDonnell-Douglas* framework. Her claim therefore fails.

**A.     *Prima Facie* Case**

A claimant must first establish a *prima facie* case of racial discrimination by demonstrating, by a preponderance of the evidence, that (1) she is a member of a protected class, (2) she was

qualified for the position she held or sought, (3) she suffered an adverse employment action, and (4) similarly situated persons who are not members of the protected class were treated more favorably, or that the circumstances of her termination give rise to an inference of discrimination. *See Taylor v. Brandywine Sch. Dist.*, 202 F. App'x 570, 575 (3d Cir. 2006) (citing *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 410–11 (3d Cir.1999)).

Ms. Rothmaller has met the first three *prima facie* criteria because she is African–American, she was qualified as a Practice Manager, and Penn terminated her. Penn argues that Ms. Rothmaller was not qualified because she edited employee time entries. "While objective job qualifications should be considered in evaluating the plaintiff's *prima facie* case, the question of whether an employee possesses a subjective quality ... is better left to consideration of whether the employer's nondiscriminatory reason ... is pretext." *Dorsey v. Pittsburgh Assocs.*, 90 F. App'x 636, 639 (3d Cir. 2004) (quoting *Sempier v. Johnson & Higgins,* 45 F.3d 724, 729 (3d Cir.1995)) (internal quotations omitted). Penn has no evidence suggesting that Ms. Rothmaller did not satisfy the objective qualifications for a Practice Manager.

As to the fourth criterion, Ms. Rothmaller must produce evidence creating an inference that Penn based its employment on an illegal discriminatory criterion. *See Jones v. Univ. of Pennsylvania*, No. Civ. A. 00-2695, 2003 WL 21652083, at *2 (E.D. Pa. Mar. 20, 2003). It is difficult, if not impossible, to reach that conclusion, even viewing the evidence in the light most favorable to Ms. Rothmaller. Penn fired Ms. Rothmaller, Ms. Young, and Ms. Engle when it determined that they had altered employees' time cards. It conducted an audit and determined that the practice was not widespread. And there is no evidence that Penn looked the other way after learning that a Practice Manager had engaged in similar conduct. Ms. Rothmaller's only evidence suggesting an inference is her unsubstantiated assertion that Penn's audit was wrong and that other

Practice Managers did alter employee time cards on a routine basis. Without some evidence, though, Ms. Rothmaller's assertion is not enough. There is therefore no evidence that Penn subjected Ms. Rothmaller to a different standard than other, similarly situated Practice Managers, let alone that racial animus guided Penn's decision. Ms. Rothmaller cannot make out a *prima facie* case of racial discrimination.

### B.     Pretext

Even if Ms. Rothmaller could make out a *prima facie* case, she cannot demonstrate pretext. As a practical matter, the fourth *prima facie* criterion and the pretext often overlap. Certainly, that is the case here, where the same evidence that undermines the initial allegation of discriminatory intent also negates any assertion of pretext. To withstand summary judgment, Ms. Rothmaller must show evidence "either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Alcantara v. Aerotek, Inc.*, 765 F. App'x 692, 697 (3d Cir. 2019) (*quoting Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (emphasis omitted)). But "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, at 765.

Ms. Rothmaller has not satisfied her burden. She alleges that the practice of editing time punches was "widespread" among Practice Managers, but she offers no evidence of that. Though the record shows that she was not the only Practice Manager to engage in such conduct, it also reveals that she was not the only Practice Manager who Penn terminated for such conduct.

Ms. Rothmaller has also not offered any evidence that other, similarly-situated employees were treated more favorably than she was. She has not identified any employee by name who

6

engaged in such conduct. She cannot rely on her general say-so, without any actual evidence, to prove pretext. In fact, Penn investigated Ms. Rothmaller's allegation by conducting an audit and found no evidence that the practice was widespread.

Ms. Rothamaller criticizes Penn's audit and suggests that it was so sloppy that it leads to an inference of racial animus. She offers no evidence criticizing the design of Penn's audit. Nor would it matter. Penn has no obligation to ensure that its audits reach some level of scientific soundness. Unless Ms. Rothmaller has evidence that the audit was just window-dressing to cover up actual discrimination (such as evidence that Penn designed the audit to avoid learning that white Practice Managers were engaging in similar conduct), then any alleged sloppiness in its design and execution does not help her.

## IV.   CONCLUSION

The record demonstrates that, whenever Penn identified a Practice Manager who was altering employees' time cards, it terminated that person. There is no evidence that those decisions had anything to do with any employee's race. Therefore, the Court will grant the motion for summary judgment. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J**.

Dated:  April 20, 2020